UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| LORENZO CHUTA-SALAZAR, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | |
| | * | |
| TODD BLANCHE, Acting Attorney General | * | Civil Action No. 1:26-cv-11287-IT |
| of the United States;[1] MARKWAYNE | * | |
| MULLIN, Secretary of Homeland Security; | * | |
| TODD LYONS, Acting Director, U.S. | * | |
| Immigration & Customs Enforcement; and | * | |
| FIELD OFFICE DIRECTOR, ICE Boston | * | |
| Enforcement and Removal Operations, | * | |
| | * | |
| Defendants. | * | |
| | * | |

MEMORANDUM & ORDER

April 8, 2026

TALWANI, D.J.

Pending before the court is Petitioner Lorenzo Chuta-Salazar's Pro Se Emergency

Motion to Stop Removal, to Order Return to Massachusetts, and Petition for Review

("Emergency Motion and Petition") [Doc. No. 1].

### I.      Background

A. *Petitioner's Immigration Status*

Petitioner is a citizen of Guatemala. Emergency Mot. & Pet. 2 [Doc. No. 1]; Opp'n Ex. 1,

¶ 6 ("Sullivan Decl.") [Doc. No. 8-1].

---

[1] The court substitutes Todd Blanche for former Attorney General Pam Bondi pursuant to
Federal Rule of Civil Procedure 25(d).

On or about April 11, 2013, Petitioner entered the United States and was encountered by a U.S. Border Patrol agent "at or near Mission, Texas." Sullivan Decl. ¶ 7 [Doc. No. 8-1]. Petitioner was taken into custody, "processed for expedited removal under 8 U.S.C. § 1225(b)(1)[,]" and removed from the United States "on or about May 15, 2013[.]" Id. ¶¶ 7–8. He later reentered the United States without inspection or admission at an unknown date and location. Id. ¶ 9.

B. *Petitioner's Arrest and Detainment*

Earlier this year, local police officers arrested Petitioner in Chelsea, Massachusetts. Emergency Mot. & Pet. 3 [Doc. No. 1]. He was arraigned in Chelsea District Court "for the criminal offenses of Assault and Battery on a Family or Household Member and Malicious Destruction of Property." Sullivan Decl. ¶ 10 [Doc. No. 8-1]. Petitioner denies these charges, which remained pending as of the filing of Petitioner's motion. Emergency Mot. & Pet. 3 [Doc. No. 1]; Sullivan Decl. ¶ 10 [Doc. No. 8-1].

Following his arrest and arraignment, U.S. Immigration and Customs Enforcement ("ICE") officers detained Petitioner[2] and "reinstated Petitioner's prior removal order by serving Petitioner with a Form I-87, Notice of Intent/Decision to Reinstate Prior Order." Sullivan Decl. ¶ 11 [Doc. No. 8-1]. ICE transferred Petitioner to the Plymouth County Correctional Facility ("Plymouth") in Plymouth, Massachusetts. Id.; Emergency Mot. & Pet. 3 [Doc. No. 1].

C. *Petitioner's Credible Fear Interview and Subsequent Proceedings*

After Petitioner expressed a fear of returning to Guatemala, an asylum officer with U.S. Citizenship and Immigration Services ("USCIS") interviewed Petitioner on or about February

---

[2] Petitioner states that he was arrested and turned over to ICE on January 2, 2026. Emergency Mot. & Pet. 3 [Doc. No. 1]. Defendants state that Petitioner was arraigned and taken into ICE custody on February 2, 2026. Sullivan Decl. ¶¶ 10–11 [Doc. No. 8-1].

18, 2026. Emergency Mot. & Pet. 3 [Doc. No. 1]; Sullivan Decl. ¶¶ 11–12 [Doc. No. 8-1]. On

February 25, 2026, USCIS issued a negative credible fear determination. Emergency Mot. & Pet.

3 [Doc. No. 1]; Sullivan Decl. ¶ 13 [Doc. No. 8-1].

Petitioner requested review of this determination by an Immigration Judge. Emergency

Mot. & Pet. 3 [Doc. No. 1]; Sullivan Decl. ¶ 13 [Doc. No. 8-1]. An Immigration Judge at the

Chelmsford Immigration Court held a videoconference hearing to review USCIS's determination

on March 5 or March 6, 2026. Emergency Mot. & Pet. 3 [Doc. No. 1]; Sullivan Decl. ¶ 14 [Doc.

No. 8-1].[3]

On March 6, 2026, the Immigration Judge "found that there was no reasonable possibility

of torture or persecution on account of a protected ground." Sullivan Decl. ¶ 14 [Doc. No. 8-1];

see Emergency Mot. & Pet. 4 [Doc. No. 1]. The Immigration Judge also informed Petitioner that

he "had no right to appeal her decision." Emergency Mot. & Pet. 4 [Doc. No. 1]; see Sullivan

Decl. ¶ 14 (reporting that, upon the Immigration Judge's finding of no credible fear, "[t]he case

was then returned to ICE for removal of the Petitioner. There is no appeal from this order.").

  D. *Petitioner's Attempt to File a Habeas Petition and His Transfer from the District of Massachusetts*

Petitioner reports that, proceeding *pro se*, he sent an "earlier version" of the pending

motion "by email to ecfhelp@mad.uscourts.gov on March 14, 2026." Emergency Mot. & Pet. 2

[Doc. No. 1]; see Beretich Letter [Doc. No. 6]. No "earlier version" was docketed by the court.

---

[3] Petitioner states that he was given only one day prior notice of the hearing, that he did not have legal representation, and that the Immigration Judge "gave [Petitioner] no opportunity to gather any evidence to support [his] fear claim." Emergency Mot. & Pet. 3–4 [Doc. No. 1].

Petitioner states that on Sunday, March 15, 2026, Attorney Thomas Beretich[4] notified ICE that Petitioner "was a potential member of the [Calderon v. Mayorkas, No. 1:18-cv-10225-PBS (D. Mass.)] class and that an emergency stay and habeas corpus was being submitted in federal court." Emergency Mot. & Pet. 4–5 [Doc. No. 1]. The same day, Petitioner's wife, who is a United States citizen, filed a "Form I-130, Petition for Alien Relative, with the [USCIS]" on Petitioner's behalf. Id. at 4. ICE placed Petitioner on a flight that departed from Bedford, Massachusetts, "at approximately 12:14PM EST and arrived in Alexandria[,] Louisiana at approximately 2:43 PM CST (3:43PM EST)[.]" Sullivan Decl. ¶ 15 [Doc. No. 8-1].

E.  *Petitioner's Filings in this Court, the Court's No Transfer / No Removal Order, the First Circuit's Stay Order, and Petitioner's Current Location*

On Monday, March 16, 2026, Petitioner's *pro se* Emergency Motion and Petition [Doc. No. 1] was received by the clerk's office in the District of Massachusetts at 1:08 p.m., see id. at 1, and appeared on this session's electronic docket at 1:34 p.m. At 2:05 p.m., the court issued an Order Concerning Service of Petition and Stay of Transfer or Removal [Doc. No. 4], ordering, inter alia, that Petitioner not be removed from the District or deported, removed, or otherwise transferred outside of the United States until further order of this court. Id. at 4.

Shortly thereafter, at 2:48 p.m., the clerk's office received a letter from Beretich, stating that "[a]n emergency *pro se* motion for stay of removal and petition for review was submitted to this Court by email on Saturday[,] March 14, 2026, and a supplemental and amended version was also submitted by hand this morning." Beretich Letter [Doc. No. 6]. In the letter, Beretich

---

[4] Beretich identifies himself as Petitioner's "Interpreter and Assisting Immigration Attorney." Beretich Letter [Doc. No. 6]; see Emergency Mot. & Pet. 8–9 [Doc. No. 1]. He states that, although he did not file the pending motion on Petitioner's behalf, he "assisted [Petitioner] in preparing this filing given the emergency nature of these proceedings, the impossibility of him acting alone while detained and in transit, and the existence of a language barrier requiring interpretation." Emergency Mot. & Pet. 8 [Doc. No. 1].

reported that he had just been contacted by Petitioner and that Petitioner confirmed that he was currently detained at the Alexandria Staging Facility in Louisiana. Id.

Also on March 16, 2026, Petitioner filed a petition for review with the United States Court of Appeals for the First Circuit. See Chuta-Salazar v. Bondi, No. 26-1262, Dkt. No. 1 (1st Cir. 2026). Pursuant to the First Circuit's Local Rule 18, Petitioner's removal was administratively stayed "for ten business days from the date of this order [March 16]." Id., Dkt. No. 5.

On March 18, 2026, Respondents reported that Petitioner remained at the Alexandria Staging Facility "pending enforcement of the reinstated removal order to Guatemala." Sullivan Decl. ¶ 16. [Doc. No. 8-1]. On March 27, after a check of ICE's Online Detainee Locator System the day prior indicated that Petitioner was again detained at the Plymouth County Correctional Facility, the court ordered Respondents "to provide a status report as to Petitioner's current location[.]" Elec. Order [Doc. No. 9].

In response, Respondents informed the court that Petitioner "was transferred back to Massachusetts on March 22, 2026 and . . . has been housed at [the] Plymouth County Correctional Facility since that date." Status Rep. 1 [Doc. No. 10]. Petitioner confirmed his location in a separate filing later that day and informed the court that, on March 25, 2026, the First Circuit denied Petitioner's motion for a stay of removal and vacated the ten-day administrative stay of removal entered on March 16. Pet'r's Notice of Devs. in Parallel Procs. Including First Circuit Stay Denial, Transfer Hist., and Return of Pet'r to Mass. at ECF 2–3 ("Pet'r's Notice") [Doc. No. 11]. The First Circuit also "directed Petitioner to file a written response to the portion of the government's filing arguing for summary disposition . . . by April 24, 2026." Id. at ECF 3.

Petitioner reports that "ICE has scheduled a post-order custody review for on or about April 23, 2026[,]" with supporting documentation due to "the Burlington, Massachusetts ICE Detained Unit by April 18, 2026." Id.

## II.    Discussion

In his Emergency Motion and Petition [Doc. No. 1], Petitioner requests, inter alia, that this court stop his removal to Guatemala while it reviews his case; "order ICE to return [Petitioner] to Massachusetts"; "declare that this Court retains full jurisdiction over [his] case notwithstanding ICE's transfer of [Petitioner] to Louisiana"; "review the serious violations of [Petitioner's] constitutional rights that occurred during [his] immigration proceedings in Massachusetts"; "consider whether [Petitioner's] removal violates the court approved settlement agreement in Calderon Jimenez v. Mayorkas"; and "give [Petitioner] and [his] attorney a full and fair opportunity to present [Petitioner's] case." Id. at 7 (capitalization omitted).

In their Opposition [Doc. No. 8], Respondents assert that this court "lacks habeas jurisdiction over this Petition[.]" Id. at 1. Respondents argue in the alternative that Petitioner's "arrest, detention, and removal were authorized by the INA and did not violate the Constitution" and that "Petitioner's claim of a violation of the Calderon class action settlement" fails. Id. at 14, 19.

### A.  Jurisdiction

The protections of the Constitution apply to all persons within the jurisdiction of the United States, including citizens and non-citizens alike, and including those persons who are present in the United States without authorization. See Plyler v. Doe, 457 U.S. 202, 210 (1982) (noting that "[a]liens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments"). Although a federal district court does not generally have subject matter

6

jurisdiction to review orders of removal issued by an immigration court, see 8 U.S.C. § 1252(a)(1), (g), it does have jurisdiction over habeas petitions. 28 U.S.C. § 2241(a); see U.S. CONST. art. I, § 9, cl. 2 (providing that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it").

A federal court "always has jurisdiction to determine its own jurisdiction," including its own subject matter jurisdiction. Brownback v. King, 592 U.S. 209, 218-19 (2021) (quoting United States v. Ruiz, 536 U.S. 622, 628 (2002)). To give the court an opportunity to consider whether it has subject matter jurisdiction, and, if so, to determine the validity of the habeas petition, the court may order a respondent to preserve the status quo. See United States v. United Mine Workers of Am., 330 U.S. 258, 293 (1947) (ruling that "the District Court ha[s] the power to preserve existing conditions while it [is] determining its own authority to grant injunctive relief[,]" unless the assertion of jurisdiction is frivolous).

In their Opposition [Doc. No. 8], which was filed while Petitioner was still in Louisiana, Respondents asserted that this court lacked habeas jurisdiction over this Petition "because Petitioner was not in the District of Massachusetts when he filed his Petition . . . to block [ICE's] effectuation of his final removal order." Id. at 1. Now that Petitioner is once again in Massachusetts, the court considers any objections to the court's jurisdiction over Petitioner's habeas claim to be moot. See Rumsfeld v. Padilla, 542 U.S. 426, 444 (2004) ("In habeas challenges to present physical confinement . . . the district of confinement is synonymous with the district court that has territorial jurisdiction over the proper respondent.").

B.  *Legal Authority for Petitioner's Detention*

Where Petitioner requests that this court "review the serious violations of [his] constitutional rights that occurred during [his] immigration proceedings in Massachusetts[,]" "give [Petitioner] and [his] attorney a full and fair opportunity to present [Petitioner's] case[,]" or

otherwise intervene in Petitioner's impending removal, the court, by statute, lacks jurisdiction to do so. See 8 U.S.C. § 1252(a)(5) ("[A] petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided under subsection (e) [concerning class certification, habeas proceedings, and certain limited actions in the United States District Court for the District of Columbia].").

As Petitioner is proceeding *pro se*, the court construes the remainder of the Petition [Doc. No. 1] as seeking relief from ICE detention. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (quotations omitted)).

Both parties agree that Petitioner is subject to a final order of removal. See Emergency Mot. & Pet. 6 [Doc. No. 1]; Sullivan Decl. ¶ 11 [Doc. No. 8-1]. Pursuant to 8 U.S.C. § 1231(a), a noncitizen subject to a final order of removal "shall" be removed from the United States "within a period of 90 days" (the "removal period"). During the removal period, the noncitizen is subject to mandatory detention. See 8 U.S.C. § 1231(a)(2)(A) ("During the removal period, the Attorney General shall detain the alien."). Accordingly, where the existence of the final order is not in dispute, and where Petitioner was not previously detained for ninety days, the court finds that Petitioner is subject to mandatory detention under 8 U.S.C. § 1231.

Based on the available record, the court also finds that Petitioner's detention does not offend his right to due process under the Fifth Amendment to the United States Constitution where (1) Petitioner's detention is within the presumptively reasonable six-month period set forth in Zadvydas v. Davis, 533 U.S. 678, 689, 701 (2001); and (2) Petitioner has not shown that

8

there "is no significant likelihood of removal in the reasonably foreseeable future[,]" id. at 701. To the contrary, "ICE is prepared to expeditiously effectuate Petitioner's removal to Guatemala" and "expects that the Government of Guatemala will accept Petitioner upon removal from the United States." Sullivan Decl. ¶ 19 [Doc. No. 8-1].[5]

As to Petitioner's argument regarding his potential membership in the class certified in Calderon v. Mayorkas, No. 1:18-cv-10225-PBS (D. Mass), Respondents assert that Petitioner is neither a member of the class nor able to "dispute . . . compliance with the [settlement in that case]" through a writ of habeas corpus, rather than through a "[m]otion to [e]nforce," if he is a class member. Opp'n 19–20 [Doc. No. 8].

In Calderon, another session of this court approved a settlement agreement that, in relevant part, permitted class members to move to reopen and dismiss their removal proceedings within a two-year period. See Order, No. 1:18-cv-10225-PBS, Dkt. No. 677 (D. Mass. Jan. 16, 2025); id., Joint Mem. for Final Approval of Settlement Agreement, No. 1:18-cv-10225-PBS, Dkt. No. 671, at *7–8 (D. Mass. Jan. 8, 2025). The certified class was defined as follows:

> [A]ny United States citizen and his or her noncitizen spouse who (1) has a final order of removal and has not departed the United States under that order; (2) is the beneficiary of a pending or approved I-130, Petition for Alien Relative, filed by the United States citizen spouse; (3) is not "ineligible" for a provisional waiver under 8 C.F.R. § 212.7(e)(4)(i) or (vi); and (4) is within the jurisdiction of Boston Immigration and Customs Enforcement—Enforcement and Removal Operations ("ICE-ERO") field office (comprising Massachusetts, Rhode Island, Connecticut, Vermont, New Hampshire, and Maine).

Id., Order, No. 1:18-cv-10225-PBS, Dkt. No. 253, at *2 (D. Mass. May 17, 2019). Where Petitioner has a final order of removal and previously departed the country pursuant to that order

---

[5] That Petitioner is scheduled for a "post-order custody review" on April 23, 2026, Pet'r's Notice at ECF 3 [Doc. No. 11], is also not a basis on which the court may grant habeas relief.

9

in May 2013, see Sullivan Decl. ¶¶ 7–8 [Doc. No. 8-1], Petitioner is expressly excluded from the Calderon class. See Order, No. 1:18-cv-10225-PBS, Dkt. No. 253, at *2 (including in the class "any United States citizen and his or her noncitizen spouse who (1) has a final order of removal and has not departed the United States under that order. . . ." (emphasis added)).

### III.    Conclusion

For the foregoing reasons, Petitioner's Emergency Motion and Petition [Doc. No. 1] is DENIED. The court's Order Concerning Service of Petition and Stay of Transfer or Removal [Doc. No. 4] is VACATED.

IT IS SO ORDERED.

April 8, 2026                                                /s/ Indira Talwani
                                                            United States District Judge

10